Good afternoon. This is the hearing in In Re Archibald Cunningham, Ninth Circuit docket number 1880158. This is a hearing requested by Mr. Cunningham to address whether the Ninth Circuit should impose discipline reciprocal to the disbarment order disbarring him from practice in the state of California. And so I just wanted Mr. Cunningham to give you a few of the ground rules. First of all, we're conducting this hearing by video conference from the Ninth Circuit in San Francisco. And I can see you. Are you able to see me and to hear me? All right. I would like to begin, because this is an evidentiary hearing and you're going to be presenting testimony, I'd like to ask the courtroom deputy here to administer the oath to you. Hi, Mr. Cunningham. Could you please raise your right hand? Do you solemnly affirm the decision you're about to make in the case now before this court will be the truth, the whole truth, and nothing but the truth, and that you do so under the penalty of perjury? I do. Okay. Thank you. Thank you. All right. So the scope of this hearing is limited to the question whether the respondent, Mr. Cunningham, will continue to be able to practice in the Ninth Circuit. Nothing in this order would affect your ability to practice in any other court or call into question the validity of the state court order. And you do have this right to a hearing that you've exercised, and under the governing law, the state court determinations, the findings in the state court are accorded a presumption of correctness. You in this hearing have the burden of showing that the state bar proceeding did not afford you adequate notice and opportunity to be heard, or that the evidence that was presented was not sufficient to support the disbarment order, or that some other grave reason exists that would prevent the Ninth Circuit from recognizing the state court determination. You have submitted a number of filings in response to this court's order to show cause concerning reciprocal discipline. I've read those. I understand your arguments. I want to assure you that you don't need to spend this time repeating any arguments that you've already made, but this is your opportunity to make a showing under the criteria that I've set out. So what do you anticipate your presentation will cover today? What could you repeat the answer? What do you propose to present today in this hearing? Other than testimony and a few documentations, other than that, probably just what's on the familiar with the basis for the discipline and the state bar court determinations. So this is your opportunity, and I'm going to allow you to present your testimony now. All right. Again, I'm assuming you're Commissioner Shaw, right? That's correct. I'm sorry I did not introduce myself. Yes, I'm Appellate Commissioner Peter Shaw. Okay. Just to clarify that. So again, thank you for accommodating me. I recently had a ligand brain tumor removed, and I may not be as sharp as I should be in fact this week. I started resumed chemotherapy five days, Monday through Friday on, and then three weeks off. So unfortunately, the way it was staggered, my chemotherapy began on Monday, and so I'm suffering a kind of chemo brain injury, as they say. So bear with me if I'm maybe not as articulate as I'd like to be, or as coherent as I should be. But in any event, I think maybe what I should start with is my petition for review, and kind of go over some of the high points of that, because as you notice, improperly in one of my pleadings or attachments sent this week, I noticed that the issues that I presumption is that's fine and dandy. The first thing I would say is that that presumption is all good. But on the other hand, to presume that the state bar's opinion is presumptively valid is also implicitly suggesting that there were no errors in that. And this is particularly difficult because the opinion by the state bar, the summary denial, presumes to be correct. I think in Ray said that a party had the right, presumably, to raise constitutional issues in their petition for review, and that the state bar would address those. In this case, the state bar didn't address any of the constitutional questions. It just apparently, summarily denied it without explanation, and apparently rests on the presumption that anything the state bar issues is fine. The thing I find problematic about this is that I presented, and I think in the state bar rules of procedure, I think 9.16 through A through B lists grounds for judicial review, provided oral argument in a hearing. In this First of all, in my petition for review, I make the point that the state bar doesn't have jurisdiction, subject matter jurisdiction, because I'm being disciplined not for any action under the state bar. The state bar disciplines people for failing to adhere to the state bar, and all the cases cited in the Notice of Disciplinary Proceedings are cases that were filed not by me, but by the other parties. So we have two sets of cases under the is my custody dispute. I was sued in a marriage dissolution, and after ten years, been in a custody dispute. You know, my criminal rights were summarily terminated by Ms. Schaap, opposing counsel. She asked for that on the day of my criminal rights, and then I was denied permission to appeal under the vexatious litigant statute. I haven't seen my daughter, spoken with her, heard her in over ten years. When she was nine years old, I lost custody like this. Can I ask you, excuse me for interrupting, but I have a question about that. I just want to make sure I have the chronology right. So the proposed order terminating custody was summarily approved at the hearing. Was there then No, no, no, no, no. Let me just, I don't mean to be, interrupt you, but I just want to understand. That's fine. It wasn't summarily accepted at the hearing. It was submitted without my knowledge, without any indication. I'd filed an I said the order was void on its face because it involved a trial by declaration, and as such, it was void. Then opposing counsel, Maria Schaap, submitted after the hearing, without my knowledge, without it ever being raised in the hearing, she raised on her view that I said that I wasn't going to obey that order. That order to show cause, I'd filed almost two years before to restore 50-50 shared custody. At the February 26, 2010 hearing, I said that order was void on its face because it involved a trial by declaration, which Chief Justice George, state Supreme Court, had said violated the hearsay law without reaching the issue of whether there was a due process violation. So that was my point. When I filed my 50-50 shared custody, that the order was void on its face for violating the hearsay rule and possibly due process in the issue Justice George didn't reach. So at the February 26 hearing, after the hearing, without my knowledge, without my consent, without my ever agreeing, Ms. Schaap said, Mr. Cunningham has – she submitted an order in which she indicated that I had agreed to the termination of all my parental rights. She forged my name on the signature line by typing it. Judge Mahoney then came and signed it and it was effective immediately. I didn't hear about or know about this order for – until I got something in the mail three days later. It wasn't an issue presented during the hearing. It wasn't an issue raised. My order to show cause was to restore, not to terminate, my within a week, filed a motion for reconsideration. It was summarily denied. So for the next 10 years, in that same hearing, Judge Mahoney, the family law judge, declared me vexatious. He would go on to declare me vexatious three times for being a defendant and trying to regain my rights. He declared me vexatious on that day, declared me vexatious the second time. First time, he sanctioned me $22,000. The second time, same facts, same people, sanctioned me $3,000. He would go on to sanction me a fourth time. So a slew of constitutional and procedural due process violations stacked one upon the other. First of all, I was given no due process at this hearing. Then the vexatious litigant statute was used to to challenge that order. And the state Supreme Court itself said that the vexatious litigant statute should be interpreted according to its plain language. And the plain language is that, and this was in Schwan v. Gerardi, the plain language of the vexatious litigant statute says there's two ways to declare you vexatious. Then to get a pre-filing order on you. But Judge Mahoney, in his way, saw fit to have me declared vexatious not once, but twice, you know, sanctioning me multiple times, $22,000 for the first one, $23,000 for the second one. Sanctioned again, you know, Scott McKay, the vexatious litigant statute had me declared vexatious a third time, you know, ended up getting $26,000 from the trial court, even though in that case, I was four times, five times by the state bar and the state courts. Under statute, they should be interpreted as allowing me to be declared vexatious once. So, the fact I was, you know, $22,000 at the state court, though I was represented, and he asked for another vexatious litigant motion in the appeal, and then he was awarded almost $70,000 for prevailing in the appeal. So, this isn't a case of my being vexatious. It's really a case of, and first of all, the first time I was declared vexatious, it was by the 730 evaluator who jumped into the family law court, a non-party, by its face, Fozzi versus whatever, Fozzi versus Peterson, you know, a non-party cannot be the judge of a judgment in their favor. He was a non-party, and Judge Mahoney let him come in. He let him come in, one, when I was, this, he was just, he was just, it was a changing of the guard. Judge Mahoney was just newly appointed. Perhaps he didn't know, but what had happened was the prior judge, in this first vexatious litigant hearing, had issued a schedule, a party schedule, into an ongoing contempt case. So, there was an ongoing contempt case, and what happened was that Judge Sullivan was switched out, and Judge Mahoney was newly appointed. He didn't know, apparently, that Judge Sullivan had given priority of scheduling to the contempt case. I pled the Fifth Amendment. I had a court appointed an attorney representing me in the contempt case that my wife brought against me, and so, you know, I didn't go to the first contempt hearing, because it was an ongoing criminal case. You know, I pled the Fifth, and my attorney didn't show up. He didn't show up for the two, the two first contempt hearings, so there was a violation of my Fifth Amendment rights, and then the attorney who jumped in, my ex-wife's attorney, and, and Judge, again, this is my, Judge Mahoney came into court, and, you know, the lawyer, Maria Schopp, and the lawyer who was representing the 730 evaluator who brought the first vexatious litigant, didn't tell the newly appointed Judge Mahoney, one, that there was a schedule of priority given to the contempt case, that I had pled the Fifth Amendment, and that my attorney, Peter Kirk, was unavailable for Fifth speech. So that hearing was held. I didn't even know about it. I didn't know my attorney didn't show up, and Judge Mahoney, two weeks after that, set up a hearing and conducted the first vexatious litigant statute, litigant ruling, and ruled against me. So, I guess what I'm saying is, I've been declared vexatious four times, twice, you know, by Judge Mahoney, based on the same facts, the same parties, in violation of Grace Giudicata, and also, essentially, by the fraud of Maria Schopp, the family law attorney opposing counsel. And, you know, David Byrne, the attorney for the 730 evaluator. So, essentially, I have four vexatious litigant statutes against me, you know, which happened during an ongoing contempt case, without my being allowed to object, in violation of my Fifth Amendment right to silence, which I pled. And these judges, these attorneys, Maria Schopp and Mark Byrne, never informed the newly appointed Judge Mahoney that the priority of scheduling was that the contempt case would go first. So, in other words, in terms of the vexatious litigant statute, I don't believe there's absolutely any evidence that I'm vexatious. What there's evidence is that the unscrupulous lawyers had used the vexatious litigant statute to deny access and to deny any kind of hearing. What troubles me about the State Bar decision is that they knew and they saw the order where Judge Mahoney, on the afternoon of the hearing, signed this termination order. And the State Bar has insisted that there was a hearing on that. Well, there's never been a hearing on the termination of my parental rights. It's never happened. What they have said in their opinion is that, oh, race judicata. Well, you know, there's got to be a hearing. There's got to be some evidentiary. So, that I was collaterally escaped, but there's never been a determination on the merits. There's never been a hearing on that. And when I brought that up, you know, Prosecutor Darling referenced the appeal I'd taken of my trial by declaration in 2008. He cited that as the basis for collateral estoppel. He claimed that the issue raised in the 2008 appeal, you know, collaterally stopped me from raising determination on my parental rights. Well, that appeal involves something that involves my challenge to the trial by declaration, which occurred in 2008. It didn't correspond to the 2010 termination order, which occurred two years later. So, the State Bar just assumed, despite evidence to the contrary, that that issue had been resolved. It had never been resolved. Same thing with some of the other issues, one of which is in the property dispute, I was evicted from my home. I was criminally charged with trespassing on my own property. And I was – these charges were made by the court-appointed lawyer in the property dispute. The problem was that in the property dispute, you know, there was no determination that the court-appointed attorney or court-appointed receiver was a licensed attorney with, you know, authority to practice law. He went into court, argued. He went into court and asked for eviction proceedings. He went into court and asked for eviction notice. He went into court, asked for the sale of my property. You know, under the State Bar, you know, only licensed members of the Bar can practice law. He admitted himself he was an attorney, but he said that he was authorized, you know, to practice law, you know, not by any statute or not by any exception to the State Bar Act, but because he was representing his own interest. At the State Bar, I showed case after case where the only person allowed to practice law on behalf of someone else or to go into court is someone who has a financial interest in the outcome of the property. At the hearing, Mr. Singer admitted he had no financial interest in my property, no financial interest in the outcome. He had no – he wasn't an attorney. The things he was doing were, by definition, practicing law. But he said that he was kind of accepted from the prohibition of unlicensed practice of law by non-lawyers, Business and Professional Code 6126, by the fact that he was representing his own interest. Yet the case law, and that's In re Sheddick, a Tenth Circuit case, and also another case that I cited, that nobody has standing to – or legal capacity to file unless they are a member of the Bar. His view was that he was representing his own interest, and the case law says the only one with standing is somebody who has a financial interest in the outcome. Let me ask you this question, if I may. In what venues did you raise this argument that Singer was not eligible to practice law? The first time I raised it, and it's in my – it was in my pleadings before the state court, it was on May 6, 2014. I filed a pleading, you know, under Business and Professional Code, that only licensed attorneys are permitted to practice law, and only people with a financial interest in the outcome have the right to practice law. They have the right to go into courts and claim they have an interest, financial interest in the outcome. That gives somebody standing. So, on April – or May 6, 2016, I went before Judge Mahoney – not Judge Mahoney, Judge Ketichet in the Northern District – I'm sorry, I had a brain tumor removed on October 4th, and I'm maybe not as coherent as I should be. Anyways, on May 6, 2014, I went before Superior Court Judge Ronald Ketichet with pleadings saying that Mr. Singer, non-lawyer, was practicing law without a license. I presented the pleadings to Judge Ketichet, who's head of the eviction proceedings at the Superior Court in San Francisco. He took one look at them. He goes, this is untimely. He literally threw the documents down. When – so this was in 2016 that you – This was in – no, this was in 2014. And when did Singer testify? When did Singer appear, and what year was that? He appeared pretty much from the beginning, 2012 to probably 2015. He also appeared and testified that he had the right to practice law. He was coached by state bar prosecutor, Duncan Carling, that he had the right to practice law. That, sure, he was going into court. Sure, he was doing all the things the lawyer did. Sure. But he was exempted, or their argument was that he wasn't practicing law because he was representing his own interests. And, you know, under Burbach versus – it's a long – Burbach versus Carling. I know that case. You cited it in your plea. I have, okay. Thank you for indulging me. In that case, you know, the state Supreme Court says that the only judicial exemption to practicing law without a license is, you know, allowed by the legislature. And the legislature has provided two exceptions, limited exceptions, you know. So there's never been a judicial exception for non-lawyer receivers. So in Birkbauer, he also said that that doesn't mean that everybody has the right to represent themselves. So I think what Mr. Singer was doing and what the little subtlety he was trying to exploit was that he was saying, you know, he wasn't licensed to practice. He wasn't an attorney. But he was going into court as a receiver, acting in a representative capacity, and representing the state. But he wasn't practicing law because he was acting in his own interest. But the case law says the only one who can bring an action, you know, under their own name and on their own behalf is an actual party to the litigation. Mr. Singer wasn't a party to the litigation, you know. He wasn't a licensed attorney. And he wants to say that there's some implicit exception that he has the right to represent his own interest. Well, he does if he has some financial stake in the outcome. There was no financial outcome that he had. He had no financial interest. So under the leading authorities in that case, Enrique Shattuck, I think I've quoted, and also the Central District, you know, saying that, you know, a non-lawyer receiver or anybody else without a financial interest has no right to, you know, to bring a claim or to practice law without a license. So under the prevailing law is that if a non-lawyer acts on behalf of someone else, all their decisions are void as a matter of law, jurisdiction, fundamental jurisdiction. They have no right to represent anyone else, much the same way if some, you know, lawyer tried to represent or a non-lawyer tried to represent a criminal defendant, it would be dismissed because they have no right to represent that. So, you know, that was, you know, what the State Bar kind of skirted over that issue and never really addressed that. So I'm rambling a little bit, so if you want to ask me some questions. So let me observe at this point, Mr. Cunningham, that nearly everything you said is familiar to me because you said it, stated it in your filings. But I, and I understand the points that you're making, but I did want to ask you on the due process prong of the reciprocal discipline test, it asks whether you were denied due process notice opportunity to be heard in the course of the State Bar proceedings. And I'm wondering if you can articulate in sort of due process language whether there's any due process aspect to this. I am inferring from what you're saying and your arguments that essentially you're saying that the evidence was really not sufficient to subject you to the discipline that was imposed because the evidence was all based on determinations that for one reason or another were invalid, void, or the underlying procedures to proceed. And that may describe you of certain process. But what I'm really interested in exploring here is whether the actual State Bar court proceedings themselves denied you due process. I understand. And besides the evidentiary matters I brought up, implicit, perhaps it wasn't clear, is that this is kind of a due process violation stacked on a due process violation stacked on a due process violation. I mean, this is something kind of unbelievable. Well, if I might, I understand your discussions about how you were treated in the State Trial Court, in the Superior Court, in the District Court in terms of the vexatious litigant issue. And that was the basis for the State Bar bringing charges against you, and they relied on the State Court proceedings as evidence, as substantial evidence to justify the discipline that they imposed. But I'm asking you a more discreet question, and that is whether the actual State Bar court proceedings themselves deprived you of notice. Were you allowed to be heard and present evidence in the State Bar court proceedings themselves, itself, so that I can, and so our court can evaluate whether the State Bar court proceedings themselves afforded you due process. Aside from all the other questions about the profits you were afforded in the State Court and the District Court. Do you understand my question? I do understand your question. I think maybe we're talking about the same thing, or we're, you know, we're talking about, you know, the heads, you know, tails, and we're talking about the same thing, but just coming at it a different way. In the State Bar opinion itself, State Bar Judge Dunn said, you know, there is no basis to allow Mr. Cunningham to challenge any of these rulings because the State Bar rulings, these facially void orders, these orders, custody hearing, unlawful practice of law, these issues were never decided. So my defense in the State Bar was that I cannot defend myself if I'm denied the right to collaterally attack these issues. I cannot, you know, essentially be told that I cannot defend myself by challenging orders that never even occurred. You know, I cannot challenge, you know, rulings that were never made. My daughter was summarily, you know, deprived of her right to have a father, and when I went to challenge that at the State Court, you know, I was denied under the vexatious litigant statute. When I went to challenge the validity of those orders, which is what the State Bar bases it on, that all, and in fact, they said all of my efforts to challenge the validity of that order were for purposes of the State Bar privilege. At the hearing, or in his opinion, State Bar Judge Dunn said there's no reason, we see no reason to allow Mr. Cunningham to collaterally attack these orders. He relied on nothing other than the characterization that the issues had been decided. I brought up, you know, and it's attached to my 60-page thing, a State Supreme Court order saying that, you know, a State Supreme Court opinion saying that one has the right to collaterally attack, you know, orders that have never been finally determined, ultimately determined, and same parties. So the issue of... What cases are those? Which one? The one you just said about the collateral attack. Was that something that you cited in a particular brief that you can refer me to? Yeah, that's in my... That's in these documents here. If you look in the table of authorities... Is that something you raised in your petition for review at the State Supreme Court? Yeah, it is. And where is it there? And where did you raise that? Okay, it's... Lucida, as I recall, is the name of the case. Lucida? Lucida, let's see. Henry Lucida, maybe? Okay. Lucida. Anything in the table of authorities? Okay. Lucida versus Superior Court, 16 and 31. That's 51, Cal 4335. So turn to page 16. Okay, thank you. We'll take a look at that. I don't mean to take up your time with more. I just wanted to be able to follow that thread. Right, I understand. I wish I were clearer and a little more coherent. But on top of the brain surgery, I started chemo this week. Yeah, so... I hate to put... ...a difficult... You're putting me... The difficulty has been not seeing my daughter for 10 years and then being told I'm just patient. Yeah. Having been evicted from your own house and then criminally tried for two years until the DA dismisses when I demand a jury trial. And then the loss of my house being sold for 400 less than fair market value. And then the court-appointed receiver and the other parties who sued me giving up almost a million of equity that I had my property. You know, it's beyond belief in my... I understand that. So, is there anything that you want to add today? Because what you've basically been saying are matters that are set out clearly in your filings. So, I understand the thrust of your argument. All of the arguments that you've been talking about today are familiar to me from your written submissions. You articulate those issues clearly. I'm wondering, you know, it's one of those things where... I remember an old judge of our court, maybe 40 years ago, in oral argument saying... He would talk to counsel at the beginning of oral argument and say, Well, counsel, before you begin oral argument, I want you to know that if you said anything in the briefs, you don't need to say them again because we read the briefs. If there's anything you came here to say that's not in the briefs, we don't want to hear about it because it should have been in the briefs and we're not going to hear about it for the first time in oral argument. And having said that, counsel, do you want to say anything? So, I'm not saying that to you. But I do want to assure you that I have received your written submissions and that I really don't need you to reiterate what you've already said. But I do want to... I understand. And I can't probably... You know, I spent about 15 years working in a legal publishing company. So, my skills, I've always recognized, are written. I have time to just go over and go over and whatever. I've never had the skills or the temperament to be a litigator. So, I cannot probably express my legal views and factual basis for those any better than I did in my pleadings. But I would want to just come back briefly and touch on the matter that you brought up about what is it about the State Bar opinion that designs the due process. And if you were to read that opinion, you know, Judge Dunn pretty much says, we're not going to allow you to collaterally attack any of these rulings because, you know, there's a factual basis for them. Or there was a final determination on the merits. There has been no final determination on the merits. That's false. That's completely made up. That's fabricated. You know, never has been on those issues. Namely, the termination of my daughter. That's never happened. Yet the State Bar, in its opinion, presumes there must have been some final determination in the State Bar. There hasn't been. Same thing with the taxation. If you don't mind me, before we go on, are you saying that because that kind of an order remains subject to revision over time, so it's never final in the sense that a judgment is sometimes final. So when you say it wasn't final, is that what you mean? That by the nature of the animal, it never can be a final judgment? Well, no. And you're right about that. That's a settled point, and I appreciate the fact that you see that. I'm saying it's not final for two reasons. One, there's never a decision. They've never even acknowledged the opinion. They didn't even include that as a document. And in their hearing, they pretty much covered up the fact that on February 26, 2010, Maria Schott, opposing counsel in the family law case, and Judge Mahoney just signed off on it. Wait a minute. You said there was never a decision, but wasn't the decision that you're attacking the one that terminated your rights? Right. No, and this is where it's settled. I tried to attack it with denied permission under the vexatious litigant statute. What happened was, you know, six weeks later, the family law judge issued his final decision. So he incorporated that February 26, 2010 hearing into his final decision. But it was not a matter brought up at the hearing on February 26. It was not before me. I wasn't even aware that that would be an issue. And one issue, Maria Schott went in there, and she signed my name on this order. And this order said, oh, yes, Mr. Cunningham agrees to terminate his parental rights. Of course, I would have never agreed to terminate my parental rights, and Judge Mahoney signed it. Hold on a second. I want to stick to this question. I think your point was that there never was a decision, never was a final decision. But then you just said that there was a decision that incorporated this hearing, so that was a decision. No, it wasn't. The order to show cause that I brought up was to restore my 50-50 hearing. After that hearing, and unbeknownst to me, Attorney Maria Schott raised the issue of terminating all my parental rights. That was never litigated at the hearing. It was never presented to me. And Judge Mahoney just signed off on it. He then, you know, not only did he sign an order in which he represented that I had voluntarily submitted to the termination of my orders, he signed off on that six weeks later. If you look at the February 26th order, it says, and in her proposed termination order, she said this takes effect February 26th, not March 30th, whatever. So, you know, the point was that the judge never gave me notice of that, never gave me a chance to argue it, and then suggested that somehow his May 30th decision somehow should be a decision prospectively on a matter that was never argued, never presented to me, and never spoken about. Did you appeal that March 30th decision? I did. Well, I appealed not the, how do you appeal a facially void order? I appealed the April 12th, the final decision. I appealed that, and it was denied under the vexatious litigant statute. So I was never given an opportunity to challenge the termination of my parental rights, you know. And what happened was this little, you know, little, you know, leisure demand, where Judge Mahoney seemed to say that his decision that I didn't know about, that I hadn't heard, that we hadn't argued about, was a decision on the termination of our parental rights. So I've been living with that for 10 years. I haven't seen my daughter in 10 years. Every motion, oh, it was decided. Well, where was it decided? Where was it argued? It was never decided. It was a fraud under Penal Code Section 134 when Ms. Schopp went in and represented that, you know, she submitted this document where I supposedly agreed to the termination of parental rights without a hearing, without notice, and on matters that were never part of the original order to show cause. Yeah, okay. We're now going over a matter that you've already gone over. I don't want to. Let me ask you this question. Because any order that, the most favorable order that could emanate from here would be an order allowing you to continue practicing in the Ninth Circuit. From a practical standpoint, would your continued membership in the Ninth Circuit bar be of value to you? Well, the only reason, and bear with me, I'm kind of long-winded for various reasons. The only time I've gone, you know, to the Ninth Circuit was to bring a class action on behalf of parents who'd been declared vexatious. So the class action involved parents who were declared vexatious and denied access to treatment. Yeah, I know about that case. Okay. So that was the only real case I've ever brought in the Ninth Circuit. So, you know, I have really no interest in practicing law between, you know, I think I had to file and become a member of the Ninth Circuit in order to bring that. And I brought that as the prosecuting, or as the attorney of record, as well as the plaintiff. Yes. Right. So, and Judge Kosinski, you know, in an unpublished opinion, upheld the ruling that there was no constitutional violation because at some point these parents might get their kids back. I'm still baffled by that ruling. But anyways, Kosinski was in an unpublished opinion issued, obviously, before he was kind of, you know, shooed out by, you know, the allegations from his clerks of misbehavior. You know, he did an unpublished opinion. And so that case is still being decided. And so, you know, I have no interest in reviving that or whatever. But what I do plan on doing in probably the 12 months I have left on the face of this earth is to get some justice from, you know, 10 years from not seeing your kid for, you know, what I just see as, you know, just a miscarriage of justice. I wouldn't even say this is a miscarriage of justice. I'd say this is like, you know, back in LA abortions by some judicial hacks. It's just been terrifying. Where in the world do you go where you don't see your kid for 10 years and you're denied all court access to challenge that? It just doesn't happen anywhere. So for me, in terms of, you know, I'm here as much about justice and getting a fair hearing as, you know, which I don't really expect anything. And there's really not much skin in the game or not much to lose other than, you know, another little, you know, slings and arrows of outrageous judiciating, you know. But one thing I am going to do probably in the next 12 months that I exist and before this stage four tumor reasserts itself is I'm going to file, you know, a 1983 action against, you know, the state bar of California. Where, you know, the state bar of California in its rulings, you know, here, you know, Chief Justice Conteel Sakayui, I'm butchering that. I don't mean to. I think you did it pretty well, actually. Thank you. Where she said there's, you know, under Rule 9, 9-16-4, that the weight of authority, justice, all that, that there's no reason to even review the case. Well, if you look at all the state bar actions, Supreme Court actions, you'll see that the California Supreme Court has made three or four rulings on the vexatious litigant statute, one of which is interpreted by the plain language. And it then names the remedies, two remedies, declare someone vexatious, then get a pre-filing order. So all these rulings don't even add up. You know, I was declared vexatious once and then again and then again. So the state Supreme Court doesn't even follow its own rulings. So, you know, she claims to review these, you know, decisions and summary denial, but all these rulings run counter to what the state bar has ruled. The state bar says, oh, Mr. Cunningham, you know, he's been declared vexatious four times. Well, the Supreme Court itself said that Mr. Cunningham can be declared vexatious once and then get a pre-filing order. It doesn't say Mr. Cunningham can be declared vexatious once, twice, three, four times. He's sanctioned $23,000 in this case, $33,000 in that case, $100,000 in this case. It doesn't say that. Yet the state bar, you know, in order to smear me as some crazy vexatious litigant, brings that up. Well, all Judge Sakaguchi needs to do in reviewing that, if she's doing it honestly, is like you can't, you know, repeatedly sue someone and repeatedly declare them vexatious. Under the Planned Parenthood vexatious litigant statute. But she does that. And so if she were honest in saying she reviewed her, you know, her opinion or the summary judgment, it isn't even consistent with their own rulings. So for me, how do you even address that short of bringing in 1983 action in the district court and kind of what's happening I think is that the state bar, you know, has a case on their hand where, you know, there have been so many outrageous rulings by so many judges, they just want this one to disappear, you know, and in a year I'll be dead. Who will really give a shit, right? Except for me and maybe a handful of people who care about justice. But Justice Sakaguchi didn't make her decision for summary, you know, denial based on, you know, she contradicts every ruling made, which she signed off on in doing that. So it's just it's mind boggling to me. I think they really want to just throw this case under the bus because, you know, you'd have to essentially admit that, you know, dozens of judges have been allowing a non-lawyer receiver to go in court and practice law and receive literally millions of dollars in fees for practicing law. A license. And so, you know, in the next year I have alive, that's what I hope. I realize there's not a whole bunch at stake in your ruling. I would hope you would, you know, follow the law and follow the presidents and look at the facts and just, you know, scratch your head and say, how does this add up? Why isn't he, why is he being disbarred? Why is this non-lawyer receiver practicing law? Why are the, you know, the parties that who, you know, sued him, you know, why are they bringing in action in the state bar when he's not even, you know, he has no clients in the state bar. You know, he's, you know, I'm being disciplined, you know, for being an attorney and defending myself. Essentially, there's nothing in the state bar law, in the state bar act that says, yes, an attorney who too vigorously defends himself and who too vigorously tries to get his daughter back is filing frivolous litigation under the state bar act as we define it. Even though Burt Fowler says only the legislature can define that. And we're going to declare Mr. Cunningham, you know, we're going to discipline him for filing frivolous actions, you know, when he's a defendant. It's just astonishing to me. You know, and maybe it's the tumor, you know, but I've only had the tumor, you know, up until October 3rd when I was removed. You know, this has been going on for 10 years. I haven't seen my daughter in 10 years. I haven't been able for 10 years. I'm not going to see my daughter for 10 years and I'm going to die without seeing her. And I'm going to be told I'm some crazy person for litigation. It just offends my sense of fair play, justice, and the fact that people who do have power are not held accountable. Are you going to be able to see your daughter? Is she approaching an age where you would be able to see her? She's turned 18, you know, and... Can't you see her now if she's willing? Well, yes. You know, and people ask me that. I go, I know when she's 9 or 10, you know, she probably loved me as much as anything in the world. I know her mother has gotten two restraining orders against me for what, you might ask? For disturbing her peace of mind by asking her to share custody with her daughter under the liberal San Francisco whatever. That I interrupted the mother's peace of mind by emailing her, never talked to her, never looked at her, never, you know, sent her some emails saying, let's end this crazy, let's end this madness and share custody of my daughter. Her attorney got a restraining order and then got it renewed for interfering with her peace of mind. Well, I will consider all the matters that you stated. You've raised issues, and I promise you I will consider those. My role now is to prepare a report and recommendation about... I understand. Could I just quickly say one thing? Again, I have mentioned that I'm going to file a 1983 suit. And I would just ask that that be mentioned in your hearing or that you maybe even forego a formal decision pending the outcome of my 1983 claim. Because I'll be able to file, you know, the seven volumes of things that I didn't really have time to get with all the testimony of various people. I can put that into my 1983 suit. So I guess I would ask that, you know, that you would say, okay, Mr. Cunningham intends to file this 1983 claim. It'll give him a greater opportunity to present evidence. And since there are no clients of his in the Ninth Circuit because he has no clients, he's got a brain tumor and he's going to die. So there's not any great risk to his practicing law in the Ninth Circuit because he has no clients there. That the Ninth Circuit just say, you know, we're going to forego this formal decision until there's been a ruling in the district court on his 1983 motion. I don't know if you have that authority to do that. I don't see why you wouldn't. But I certainly would appreciate that. And there's really no skin off your teeth because, you know, if things go accordingly, I'll be dead in a year anyway. Well, let me propose this because I don't think it's appropriate for me to act on your verbal request as you stated it. Well, it's hard for me to justify staying this matter, which is limited to addressing what's occurred already in the state court. And, you know, pending the initiation of another action that's likely to take months, many, many months, if not years, to be resolved. If you want to defer action in this case, then what I would recommend is that you file a formal motion in this disciplinary action asking to stay proceedings on whatever basis, however you want to articulate the basis. It will come to me. It is likely that what I will do is issue a report and recommendation. In the report and recommendation, I will also address the motion to stay. The report and recommendation will be sent to you. You'll have several weeks in which to read it, and if you so choose, file a response to it, objections or agreement with it. Then my report and recommendation, plus any submission you have, will be submitted to a three-judge panel of the court. And then they will decide whether to adopt my recommendation or reject my recommendation or remand it to me for further proceedings. I understand, and I appreciate it, and it's procedurally probably the appropriate way to go. But, you know, it kind of brings up the other underlying issue in this. In this disciplinary proceeding, the state bar summarily denies my motion. Half, at least half of the charges the state bar has brought against me are federal opinions and decisions. Okay, you made that argument very clearly about the jurisdiction of the state bar over matters that occurred in federal court. That's one of the issues that I'm going to have to address. So, you know, it just seems to me, you know, how the state supreme court can suggest that it, you know, reviewed, you know, my art, my federal constitutional questions in a summary motion when the state bar had no jurisdiction to do that. I mean, how does the state supreme court, you know, how is it presumed to have ruled on a matter the state bar has no jurisdiction to even consider? I mean, it's a paradox. Mr. Cunningham, we're going over ground. You've already come, and I don't, I think that I'm very satisfied that you've made a complete presentation. I think your written presentation is comprehensive, and I appreciate you appearing today. And I do wish you the best of luck dealing with your health issues. All right, I appreciate that. I want you to know that. And so I think it's time now to conclude the hearing, and I will then spend time studying your submissions carefully, considering what you've said here today as well. And I'll prepare a report and recommendation. If you wish to file any motions after the hearing, I'm happy to take that into consideration as well, as we discussed. Sure. The only question I'd have is, what does your timeline look like on issuing a order and everything else? You know, we have so many matters that we're dealing with. It would almost certainly not be done in less than a week and a half from today. I doubt we would be able to get anything out next week. Even the following week may be optimistic. But we will try to do it as quickly as possible. Well, I prefer the slower, the better. All right. Just because I'll finish my 1983 motion and submit that as something to be considered. So, again, I just feel, having spent 15 years working in legal publishing, that I'm better at expressing myself through the written word than spoken word. The longer you can take, the better. I mean, I could probably kick out a 1983 motion within days if I hadn't had my brain scrambled in the surgery. Don't worry about it. It'll be a couple of weeks before we get something out. I appreciate that. Thank you. All right. So, this matter has been submitted. And is there anybody that's present with you in the district court here who's a technician? I just need to knock on the door. All right. So, if you don't mind, would you convey our appreciation for their assistance in making this video conference possible? Yes. And I would thank your clerk for arranging this and putting this all together. I appreciate it. Okay. I can't drive, so there's no way I was going to get out to California. Right. All right. Well, good luck to you, and thank you for appearing today. Thank you. Okay. Goodbye. Bye.
judges: Peter Shaw, Appellate Commissioner